Good morning. My name is Christopher Ruland, and I represent Gerald Beyerly. The fundamental problem here is that the district court did not consider the type of circumstantial evidence that the Supreme Court in Farmer v. Brennan requires to be considered. Circumstantial evidence of what? Circumstantial evidence of Ms. Schriro's state of mind. Circumstantial evidence that she was deliberately indifferent to Mr. Beyerly's, the risk to Mr. Beyerly and the people in his position. So in other words, I think there's an important passage in Farmer, page 582, in which the court says, this question of whether a prison official is deliberately indifferent is a question of fact that may be proved in the usual ways, including by inference from circumstantial evidence. And on top of that, a fact finder may conclude that a prison official knew of a substantial risk by the very fact that the risk was obvious. And that is not what the district court did here. Well, what do you mean by risk is obvious? Obvious to whom? Well, first of all, what is the risk? In this case, the risk is of an inmate being beaten while, after he requests protective segregation, and when he's an at-risk inmate. Okay, and then why is that obvious? It's obvious here because, for a number of reasons. First, the basic facts of what happened are that Mr. Beyerly was placed in a cell with 13 other inmates of different types. When he requested protective segregation, based on a very specific need, they articulated to the prison officials. And it was obvious, A, to our expert, Mr. Montgomery, who has 42 years of corrections experience and whose qualifications nobody challenged. And he said, a prisoner... Is that the test, that it's obvious to an expert? What is the test? It has to be obvious to whom, as Judge John had asked. Who does it have to be obvious to? It's obvious to the fact finder. And Farmer doesn't say to whom exactly it's obvious, but it's clear that in Farmer... Well, but you're suing an individual here. Yes, that's correct. You're suing a position, a director, a department. You have to establish a culpable state of mind on the part of this human being. That is correct. At trial, we have to show... We have to prove her subjective state of mind. That is correct. Which was deliberate indifference. That is correct. Okay. And you have to raise the material question of fact in order to even get to trial, right? We do. We do. And in both Farmer... Farmer's a case in which the district court grants summary judgment. Ultimately, the Supreme Court remanded because there was a question of fact. Yeah, we know what happened in Farmer, but what's the evidence here that she was deliberately indifferent? There's real meaning to both of those words. Absolutely. And first, there's Arizona's policy itself, Director's Instruction 67, which she understood, which says that a prisoner who requests protective segregation should be immediately isolated in a reasonable and safe area. Well, but 67 is the second step. 67 is not what really controls this case, because this is an intake case. These people hadn't been classified yet. There was a different policy with respect to somebody who's coming in for classification. You ask for protective... The first thing we do is we put you all together. The other policy that you're talking about is the second step in the way the process worked. That's the way I understand it. Once you're classified... With respect, I don't believe that's correct. And I think that it... Well, what was the policy on people such as your client? That they were supposed to... Because he was not classified... That's right. He was supposed to be isolated, and he wasn't isolated. What's the definition of isolated under the governing regulations? It doesn't define isolated, and that is a question of what does it mean to be isolated. Again, our experts said isolated means put him alone, put him with at least, at the very least, put him with someone who has the same sort of protective segregation needs. In other words, at some point, Mr. Barley was put with other sex offenders, and we wouldn't have had a problem with that. But Ms. Schreiro said that in this case, because people weren't classified yet, she thinks that isolation means removal from the general population. What do you mean by she said? She said it in what context? In her deposition, she testified that she believed that isolation... She said, eventually, inmates won't be placed with all sorts of other inmates when they request protective segregation. But here, she called isolation, putting together in what she calls a congregate cell. That's what she testified to in her deposition. So that gets back to, I think, Judge Pratt's question. In other words, the first step, right, seems to me of determining whether or not a person is eligible for isolation is apparently what they do is, everybody who asks for isolation, they put them in this whatever you call it, congregate cell. All right, so the question is, isn't it whether that action is deliberately indifferent? Correct. And how is that deliberately indifferent? That's one step toward determining whether a person is eligible for isolation or protection, or whatever it's called. Except I don't think it's as black and white of an issue as that, because they did know something about Mr. Barley and about the other inmates. Mr. Barley was very specific. He had previously been a sex offender. They knew that. He wrote in his form when he requested segregation. Who was they? Did she know this? Did Shiro know this? Well, no. She didn't. But again, but the test is... How long had she been the director when this happened? She had been the director for 11 weeks, but she had been in question for... Did she write the policy, any of these policies? She did not write them. She was responsible for enforcing them. Well, so that's what your case really is. You're trying to tag out the director with responsibility for a policy that she didn't have anything to do with, only 11 weeks after she was in office. And you've got to show deliberate indifference. What's the jury instruction that defines deliberate indifference? Have you looked at that? No, I don't know what the jury instruction would be. See, the practice point, or the first thing you do when you file a case is you read the jury instructions, because that tells you what the elements are. And if you look at the pattern jury instructions in the Ninth Circuit, 9.25, you'll see that there's a lot more than just, well, she's responsible. You have to show that the official knows of and disregards an excessive risk to inmate health or safety. The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. I don't see where you have anything even remotely close to that, in this case, dealing with a director who's 11 weeks on the job who didn't write the policies. Well, she was responsible for enforcing policies she understood. Responsible isn't good enough. Responsible isn't good enough. That's why you have to read jury instructions before you bring a case like this. With respect, Your Honor, what Your Honor read from the jury instructions is a quote from Farmer. In Farmer, the court sent the case back to district court, where the person never even complained that he was at risk. He complained later after he was beaten up. Did he complain to Shiro? He didn't complain in Farmer, I'm sorry, in this case. No, he couldn't have any contact with her. What do you have that shows Shiro's deliberate indifference? Not responsibility because she's the director 11 weeks in, but you must show that she was deliberately indifferent. That's correct. But to be clear, Your Honor, she didn't have a view. The question is, right, can a director of corrections be held to be deliberately indifferent for, let's assume something's wrong with the policy, for not having, we'll say, changed the policy within the first 11 weeks of her administration. Isn't that the question? Yes, she can be deliberately indifferent. And again, in Farmer, the court said there's no relationship between the person being sued necessarily and the individual. She didn't have to know anything about Mr. Biley personally. He never had to meet her, and she never needed to know about his circumstance. What she needed to know, what we needed to prove, is she was aware of excessive risk to the person in Mr. Biley's position. And that's what the test is. So day one, hello, you're the director. She's immediately responsible personally for all policies in place. If this had happened on the first day, she was the director, even if she'd been brought in from outside the Department of Corrections. Yes, for two reasons. One, she had 30 years of experience in corrections, so it wasn't like they brought in, and hopefully they wouldn't bring in somebody who had no idea what they were doing. And second, I would hope that an official would understand what the policies are. And there was no dispute here in the record that she understood, A, what Director's Instruction 67 was, and B, the way people were treated in the Alhambra facility, which is different from the way they treat everybody else, because it's an intake facility. Did she express any disagreement with that policy 67? No, and we don't either. Again, we're not saying that there's a problem with Director's Instruction 67. All right, then if there's nothing wrong with the instruction, what did she do that was deliberately indifferent, or didn't do? I'm sorry? What did she do or did not do that was deliberately indifferent? She enforced a policy at the Alhambra facility that was inconsistent with Director's Instruction 67 by not isolating inmates like Mr. Byron. Wait a minute, what was inconsistent? What do you mean by she enforced? That sounds like an action that she took. She's responsible for it, no different from the defendants in the Gibson v. Washu case. She did not do anything to enforce the policy. You're simply saying she was responsible because she was the director. That's right, and she is responsible for the policy, and that's exactly what happened in the Gibson v. Washu case. It's what happened in Farmer v. Byron. The same type of defendants were sued in both of those cases, and both went back out of a grant of summary judgment. Well, what did she do that was inconsistent with the policy? She did not isolate prisoners in the Alhambra facility who needed to be isolated, who asked for protection. She had this process. They had this process of doing that, and they were in the process of doing that when this happened, right? With respect, they did not because, again, they knew everything they needed to know about Mr. Byerly and about the inmates they were putting him in the cell with to know that they shouldn't have put him in that cell. That's accepting at face value what he says. And we should on summary judgment, and inferences should be drawn in our favor. Your own expert says that there are people who lie falsely to get P.S. status so they can beat up other people. That's one of the dangers and one of the reasons why he shouldn't have been put in that cell. That's correct. So on one hand, you're supposed to accept what he says at face value. On the other hand, you're telling us they lie. Which is it? Well, it's both. However, there's no allegation that Mr. Byerly lied here, and they already knew he was a sex offender. The state of Arizona knew that already when they put him in that cell. Yes, I think you have a case that the policy may be negligent, and may need to be tweaked a little bit. But I still fail to see how you've tagged her out with deliberate indifference. Well, that's how the policy gets changed in civil lawsuits like this, I believe. And I think that she, again, is the person being responsible. No, you can change the policies with lawsuits without suing people individually. That's qualified immunity. I've noticed that very clearly. You can't nail the individual, but you can sure go in for a declaratory relief or injunctive relief. Right, and she was sued in her official and personal capacity. What happened to the other people farther down the food chain, directly responsible? You know, I wasn't a trial lawyer, and I don't know. The record doesn't make it clear to me how they got out of the case or why they were dismissed, but they're not in the case. All right, thank you, counsel. You've exceeded your time, but we will give you one minute on rebuttal. Thank you. May it please the Court, I'm Susanna Pineda, Assistant Attorney General for the State of Arizona, and I represent Defendant Shreerow in this matter. This Court's correct. It is a lawsuit against Defendant Shreerow that she acted deliberately with deliberate indifference to inmate Byerly's safety on September 24, 2003, when he was at the Alhambra Intake Center being processed back into the Department of Corrections following his arrest. As I understand the theory of Mr. Ulan's argument now, he says deliberate indifference amounts to this. They have this policy requiring segregation, and yet, first of all, he accepts it, which I guess is maybe subject to proof of trial, that it's well known among correction officials that child molesters are, you know, beat up all the time. Everybody knows that. It's a matter of common knowledge. But with 30 years of background in corrections, it was deliberately indifferent to put a person convicted of what Byerly was convicted of into the same cell with a number of people who knew that about him. That's deliberate indifference. Now, what's your response? I think that's the thrust of his argument. Why was that not, and that's pursuant to the policy now. Why was that not deliberately indifferent? That would assume, Your Honor, that DOC officials at the time, and particularly Director Schreiro, knew that Mr. Byerly was housed in a cell with other individuals who knew of his conviction for attempted child molestation. What we have here is we had Mr. Byerly when he was taken into intake, and it is a process. When he was taken into intake, he, as his deposition and the evidence showed below in the motion for summary judgment, he was taken into intake, and he was interviewed by a correctional officer. That particular correctional officer, he told two things. I'm a child molester. I've been convicted of child molestation, and I am afraid of an individual who is a member of the Mexican Mafia who was at the Maricopa County Jail, the jail from which he came into the Alhambra facility, who had threatened me, saying, I'm going to come to the yard. When I get into prison, I'm going to kill you. That is the one individual, the one fact that Mr. Byerly admitted to DOC or told DOC officials at the time of his intake. Like all other inmates who are being processed, they are told generally when they come into process, if you have a problem, if you fear for your life, if there's a situation, please advise staff members. He did so just as the other 13 individuals in his cell had said, I have a problem, and they were placed. They were isolated from general population and placed into a much smaller subset, a subset of 14 individuals. But the subset was known to everybody, I guess, to include, you know, persons other than child molesters, right? I'm sorry, Your Honor? I said the subset, I mean, the policy permits persons other than child molesters to be put into the subset. At this point, the isolation? Yes, Your Honor. Those individuals, for whatever reasons, they may be seeking protection. For whatever reason, as the record indicates, a lot of people lie to get into that situation. Some people lie to get into that situation. Right, Mr. Montgomery's opinion was that people may lie. And that's known to prison officials, right, that prisoners lie all the time. I will give you that, Your Honor. All right, sure, of course. So it's a known fact that, you know, people will lie to get into this smaller subset. And so the question is, is it deliberately indifferent to allow non-child molesters to be in the same subset as child molesters? No, Your Honor. Is that the question? What you have to look at here is the situation we had. We acknowledge that Director Schreiber at the time of her, of this incident, had been acting director of the Arizona Department of Corrections a mere 11 weeks. We also acknowledge that one of the things she knew of is that approximately a year and a half before that, DI-67, or Director's Instruction 67, which pertained to protective segregation, had been implemented. Implemented as a result of litigation, the Doe's versus Stewart case. That was ongoing litigation for a number of years, as the record reflects, for approximately I believe it was seven to eight years prior. Now, we also know that Director Schreiber, the individual who's been sued here, had no knowledge whatsoever that from the time this policy had been implemented and the manner in which it was practiced at the Alhambra facility, that no other sex offender, having requested PS, had been assaulted when isolated in the smaller cell awaiting the PS process. Including child molesters? So let's assume those facts are not disputed. What should we conclude from those facts? You need to conclude from those facts that there was no knowing disregard of a substantial risk of safety. On the part of this individual? On the part of this individual. Because what you have is you need to show a substantial risk. Now, substantial risk would have been had Mr. Brierley gone in and said, I'm a child molester, and they said, we don't care under this policy, you don't qualify, and we leave you out in general population with the masses of inmates who had been coming into the facility that day. That would have been a substantial risk. But what we have here is we have an individual, Director Schrierow, who knew or did not know that at the time, 11 weeks into her role as acting director, had no knowledge that this process was failing. Counsel, when you gave your representation that there had been no issue, had there been convicted child molesters included in that population previously? One can only assume, Your Honor, that in 11 weeks or in the year and a half approximately when DI-67, that given the number of cases that come in to the Arizona prisons of Child Molestation, that at one point or another someone had to have come through that. There's no evidence that would take time. Let me ask a hypothetical question then. Assuming now that this incident has happened and the director knows about it and she's been the director for several years now, would it be a different case if someone else were to make the same complaint today? If the assault happened today, I believe, yes, you would possibly have another situation. A contested issue of fact? A contested issue of fact. Because then under the words that we find in the Ninth Circuit Model Civil Jury Instructions, the official then would be aware of the facts from which the inference could be drawn and must also draw the inference. But we don't have that here. What was she before she became the acting director? Your Honor, I believe if my recollection serves me correctly, Director Shiro came from the state of Missouri where she was the director. So she came from outside the department. She came from outside the department. Yes, she was hired from out of state. Been there 11 weeks. 11 weeks, yes, Your Honor. And even the Director's Instruction Number 67 on Protective Segregation puts the deputy director in charge of this process, not the director. That's correct, Your Honor. And, in fact, as Director Shiro during her deposition indicated, the actual implementation or practice is even further down from that at the warden stage, the warden of the complex, which would have been the Phoenix complex in this case, Alhambra being a subunit of the Phoenix complex. Your Honors, this court must affirm not only on that basis, but also on the basis that there was no substantial risk. In fact, the lawsuit reads that the policy in itself was deliberately indifferent, the policy, the way it was implemented, DI 67. Interestingly enough, a review of the record shows that had Mr. Byerly utilized the policy, he utilized it once and went into dog run cell number 175 and was approached by a minimum of two inmates who had made somewhat threatening gestures towards him or remarks towards him. Had he at that point in time requested of an officer isolation from those inmates, DI 67 could have been applied and this would have been avoided, the injuries that he sustained that day. Unless this court has any further questions, I ask that the court affirm the judgment of the lower court. Thank you, counsel. One minute for rebuttal. Just two very quick points. First is the counsel's admission that we would have a different case now, given that there has been one assault, I think indicates that we have a different case today in this case because the Supreme Court in Farmer said on page 845 of the opinion that the deliberate indifference standard does not require a prisoner seeking relief from unsafe prison conditions to await a tragic event such as an assault before obtaining relief. But that presupposes that there is an unsafe condition that's known. I understand that. But again, if the idea is that, well, because Mr. Byerly was attacked, now Ms. Shiro knows something, the Supreme Court said we didn't even have to wait for Mr. Byerly's attack before someone could determine, a fact finder could determine there was deliberate indifference. But those facts were different because in that case the inmate was a transsexual, which is a fairly obvious risk of being placed with males with the person who considers himself a female. So that was a pretty obvious risk. And that, I think, set the stage for that particular statement that you're referring to. We don't have that here. He was a transsexual. He never complained about being put in the prison or the cell. Does the case have any evidence in it that child molesters in this preliminary status had been attacked before? No, there's no evidence on the record. I don't believe on either point. So we have to assume this is the first time. Well, again, on summary judgment there's a lack of evidence on that point. I think there's other evidence that we're supposed to be the ones that get the inferences and we're not weighing facts. I think there are enough facts to defeat summary judgment. All right, thank you, counsel. Thank you to both counsel. The case just argued is submitted for decision by the court. The next case on calendar for argument is Beshear v. Boeing.
judges: Trott, Tashima, Rawlinson